**BORCHERT ENTERPRISES, INC.,**
**Plaintiff-Appellant,**

v.

**E. H. WEBB, Jr., and Ann Thomas**
**Webb, Defendants-Appellees.**

Court of Appeals of Tennessee,
Western Section (sitting at Nashville).

Oct. 16, 1978.

Certiorari Denied by Supreme Court
Feb. 26, 1979.

Joel H. Moseley, Nashville, for plaintiff-appellant.

Claude Callicott, Nashville, for defendants-appellees.

SUMMERS, Judge.

The defendants-appellees, E. H. Webb, Jr., and Ann Thomas Webb, are the owners of certain real property in Davidson County, Tennessee, which is occupied by the plaintiff-appellant, Borchert Enterprises, Inc. The property in question was leased by the defendants to Scooter Stores, Inc., on May 8, 1971. On August 21, 1975, Scooter Stores, Inc. assigned the lease to the plaintiff, and the defendants approved the assignment.

Thereafter, some controversies arose between the plaintiff and the defendants, and a lawsuit was filed by the plaintiff against the defendants. The defendants counterclaimed against the plaintiff. The case was heard below by the chancellor without a jury. The plaintiff appealed only one of the rulings of the chancellor and assigned the following error:

The chancellor erred in holding that the term "gross sales" includes income received from pinball machines.

The clause in the lease which is in dispute is as follows:

Lessee, in addition, agrees to pay to Lessor as additional rental a sum equal to two (2%) per cent of the gross sales in excess of Two Hundred Thousand ($200,000.00) Dollars per annum, excluding sales tax and money order sales, said pay-ments to be made annually, within forty-five (45) days from each annual anniversary of this lease. Lessee agrees to provide to Lessor annually a Certified Public Accountant's report of sales to substantiate the payments made hereunder.

When the sublease was assigned by the defendants to the plaintiff, the plaintiff was engaged in the operation of a convenience market. Later, in October of 1975, the plaintiff placed in the convenience market several pinball machines. The defendants contend that the income generated by these pinball machines is included within the term "gross sales"; the plaintiff contends that the revenue from the pinball machines is not properly included within the term "gross sales". On this point the chancellor ruled as follows:

7. That receipts from pinball machines located on the leased premises are included in the term "gross sales" as said term is used in the lease and must be included in determining the amount of gross sales in excess of Two Hundred Thousand Dollars ($200,000.00) per annum upon which excess the plaintiff is required by the lease to pay an additional rental of two percent (2%) provided, however that the pinball receipts which are to be included in the term "gross sales" are those actually received by Borchert Enterprises, Inc.; stated another way, the term "gross sales" includes the fifty percent (50%) of the net profits from the pinball machines and does not include the portion of the pinball machines taken out by the owners of the pinball machines.

The 1975 Supreme Court case of *Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc.*, 521 S.W.2d 578, also involves the interpretation of a sublease. Justice Henry in that case said:

The cardinal rule for interpretation of contracts is to ascertain the intention of the parties and to give effect to that intention, consistent with legal principals. *Petty v. Sloan*, 197 Tenn. 630, 277 S.W.2d 355 (1955).

It is the Court's duty to enforce contracts according to their plain terms. *Eleogrammenos v. Standard Life Ins. Co.*, 177 Tenn. 328, 149 S.W.2d 69 (1941). Further, the language used must be taken and understood in its plain, ordinary and popular sense. *Guardian Life Ins. Co. v. Richardson*, 23 Tenn.App. 194, 129 S.W.2d 1107 (1939).

The courts, of course, are precluded from creating a new contract for the parties. *Dubois v. Gentry*, 182 Tenn. 103, 184 S.W.2d 369 (1945).

The definition of a sale under T.C.A. 47–2–106(1) is: ". . . A 'sale' consists in the passing of title from the seller to the buyer for a price. . . ." In playing pinball machines there is nothing that passes from a seller to a buyer. This activity is considered an amusement and not a sale.

The sales that are reported to the state and on which sales tax is paid do not include receipts from pinball machines. At the time that the lease was drawn up between the defendant and the original lessee, pinball machines were not in the lessee's place of business. We cannot say the parties contemplated the inclusion of revenue from pinball machines in gross sales. It was only after the sublessee, the plaintiff herein, had been in possession of the property for several months that pinball machines were placed therein.

The term "gross sales" would appear to this court to be limited to transactions which are actually considered sales. Had the language in the lease been gross revenue, income, receipts, earnings, receivables or payments, this court would have no doubt that the income from the pinball machines would be included in computing the additional rent due. However, the use of the word "sales" tends to limit the kind and quality of income to be used in calculating the additional rental.

From the testimony in the bill of exceptions we find that the plaintiff took no part in drafting the instrument in question. The defendants and Scooter Stores, Inc. negotiated the terms of this lease. It is also settled law in Tennessee that any ambiguity in a contract is settled against the drafter of that contract. *Fuller v. Orkin Exterminating Company, Inc.*, Tenn.App., 545 S.W.2d 103 (1975); *Hanover Insurance Company v. Haney*, 221 Tenn. 148, 425 S.W.2d 590 (1968); *Turner v. Zager*, 50 Tenn.App. 674, 363 S.W.2d 512 (1962); and many others.

Therefore, this court sustains the assignment of error of the plaintiff and reverses that portion of the chancellor's ruling from which the plaintiff appealed. We find that the income received from the pinball machines should not be included as part of the "gross sales" referred to in the lease agreement.

The defendants, who are the appellees herein, also assigned errors. Their first error deals with the chancellor's ruling that only fifty percent (50%) of the pinball machine income, the amount actually received by the plaintiff, would be used in computing the additional rent. As we have sustained the assignment of error of the plaintiff, this issue is no longer viable, and we will not address the same.

The defendants next assigned as error the chancellor's holding:

8. That the arrangement between the plaintiff and the owner of the pinball machines for the placement of such machines in the premises and for the operation of same does not constitute a subleasing and therefore does not constitute a violation of the provision of the lease which prohibits a sublease without the prior written consent of the defendants.

We agree with the learned chancellor that the placing of pinball machines on the leased premises is not a sublease. To hold otherwise would be ruling that any time a tenant wished to place a pay telephone, a cigarette machine, a candy vending machine or any other machine of this nature in his store, he would have to obtain the permission of the lessor. This court will take note from its general knowledge that the placing of machines such as this, absent a specific clause in the lease to the contrary,

is not a sublease in the normal and customary use of the term.

Therefore, it is the ruling of this court that the judgment of the chancellor holding that the pinball machine receipts should be computed in the "gross sales" of the lessee is overruled. The assignments of error of the defendant are without merit. The judgment of the lower court shall be reversed in its ruling from which the plaintiff appealed. The costs of this cause shall be assessed against the defendants.

MATHERNE, J., and LLOYD TATUM, Special Judge, concur.