IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
April 4, 2001 Session

# MURRAY E. BODY v. JIM LAMARR

**Appeal from the Circuit Court for Sumner County**
**No. 19707-C    Arthur E. McClellan, Judge**

_____

**No. M2000-02111-COA-R9-CV - Filed May 4, 2001**

_____

Murray E. Body ("Plaintiff") filed this personal injury suit against the owner of a jet ski, Jim Lamarr ("Defendant"). Plaintiff sustained physical injuries while pulling ski ropes into his boat when Defendant's jet ski ran over Plaintiff's ski ropes. Plaintiff had a boating policy ("Policy") with Continental Insurance Company ("Continental") which had uninsured boater limits of $100,000. Defendant had a liability policy with limits of $50,000. Plaintiff contends that his damages exceed Defendant's limits and that his Policy should be interpreted to provide coverage for accidents involving underinsured boaters. Continental filed a Motion to Dismiss, arguing that the Policy's language clearly and unambiguously does not provide coverage for underinsured boaters. The Trial Court treated Continental's motion as a Motion for Summary Judgment and granted the motion. Plaintiff was granted an interlocutory appeal. We affirm.

**Tenn. R. App. P. 9 Interlocutory Appeal by Permission;**
**Judgment of the Trial Court Affirmed; and Case Remanded.**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J. and DON R. ASH, SP. J., joined.

Joseph M. Dalton, Jr., and Catherine S. Hughes, Nashville, Tennessee, for the Appellant, Murray E. Body.

Gregory W. O'Neal, Memphis, Tennessee, for the Appellee, Continental Insurance Company.

**OPINION**

## Background

Plaintiff had a boating insurance policy with Continental which provided coverage with a $100,000 limit per accident for accidents involving an uninsured boater. On July 4, 1998, Plaintiff was injured when a jet ski ran over water ski ropes that Plaintiff was pulling into his boat. Defendant owned the jet ski. At the time of the accident, Defendant had a boating liability policy with limits of $50,000.

Plaintiff's Policy provides, in pertinent part, as follows:

### Coverage G -- Uninsured Boater

**Coverage Provided**

If an amount is shown for Coverage G on the Declarations Page, we will pay the damages which, because of bodily injury received aboard the insured boat, you are legally entitled to recover from the uninsured owner or operator of another boat.[1]

"Uninsured boater" and "uninsured owner or operator" mean an owner or operator of a boat other than the boat named in this policy who is legally responsible for the accident, and:
   A.   to whom no liability policy applies; or
   B.   who cannot be identified (such as a hit-and-run operator).

* * * * * *

**Payment Reductions**

Payment under this coverage shall be reduced by:
   A.   all sums paid by or on behalf of those legally responsible . . . .

Payment under this coverage to or for an insured person will reduce the amount that person is entitled to recover from the Boating Liability or Medical Payments coverages of this policy.

* * * * * *
### General Conditions

-------

[1] The Policy's Declarations Page showed that Plaintiff had uninsured boater coverage.

* * * * * *

**Other Insurance**

> If there is any other available insurance that would apply in the
> absence of this policy, this insurance shall apply as excess over the
> other insurance, but the combined amount shall not exceed the limits
> of this policy.

Plaintiff claims that his damages exceed Defendant's policy limits and contends that "Coverage G" of his Policy should be broadly interpreted to provide coverage for accidents involving underinsured boaters such as Defendant. It is undisputed that the Policy, on its face, does not contain a provision for underinsured boater coverage, as it does for uninsured boaters. Apparently working under an underinsured motorist theory, Plaintiff obtained service on Continental. In response, Continental filed a Motion to Dismiss which the Trial Court properly treated as a Motion for Summary Judgment because Continental filed an affidavit in support of its motion. The Trial Court granted Continental's motion, holding that Plaintiff's Policy does not provide underinsured boater coverage. Plaintiff's Motion for Interlocutory Appeal was granted.

## Discussion

Plaintiff contends that the Trial Court erred in granting Continental's Motion to Dismiss because the language of the Policy provides coverage not just for accidents involving an uninsured boater but also for those involving an underinsured boater such as Defendant. Plaintiff also contends that in light of the Tennessee Uninsured Motor Vehicle Coverage statutes, the Trial Court's interpretation of the Policy is in conflict with Tennessee law. Continental, of course, does not dispute the Trial Court's granting of its Motion and argues that the Policy language cannot reasonably be interpreted to include coverage for an underinsured boater such as Defendant.

The Trial Court correctly treated Continental's Motion to Dismiss as a Motion for Summary Judgment. *See* Tenn. R. Civ. P. 12.02. Our Supreme Court outlined our standard of review of a motion for summary judgment in *Staples v. CBL & Assoc.*, 15 S.W.3d 83 (Tenn. 2000), as follows:

> The standards governing an appellate court's review of a motion for summary
> judgment are well settled. Since our inquiry involves purely a question of
> law, no presumption of correctness attaches to the lower court's judgment,
> and our task is confined to reviewing the record to determine whether the
> requirements of Tenn. R. Civ. P. 56 have been met. *See Hunter v. Brown*,
> 955 S.W.2d 49, 50-51 (Tenn.1997); *Cowden v. Sovran Bank/Central South*,
> 816 S.W.2d 741, 744 (Tenn.1991). Tennessee Rule of Civil Procedure 56.04
> provides that summary judgment is appropriate where: (1) there is no genuine
> issue with regard to the material facts relevant to the claim or defense

contained in the motion, *see Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn.1993); and (2) the moving party is entitled to a judgment as a matter of law on the undisputed facts. *See Anderson v. Standard Register Co.*, 857 S.W.2d 555, 559 (Tenn.1993). The moving party has the burden of proving that its motion satisfies these requirements. *See Downen v. Allstate Ins. Co.*, 811 S.W.2d 523, 524 (Tenn.1991). When the party seeking summary judgment makes a properly supported motion, the burden shifts to the nonmoving party to set forth specific facts establishing the existence of disputed, material facts which must be resolved by the trier of fact. *See Byrd v. Hall*, 847 S.W.2d at 215.

To properly support its motion, the moving party must either affirmatively negate an essential element of the non-moving party's claim or conclusively establish an affirmative defense. *See McCarley v. West Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn.1998); *Robinson v. Omer*, 952 S.W.2d 423, 426 (Tenn.1997). If the moving party fails to negate a claimed basis for the suit, the non-moving party's burden to produce evidence establishing the existence of a genuine issue for trial is not triggered and the motion for summary judgment must fail. *See McCarley v. West Quality Food Serv.*, 960 S.W.2d at 588; *Robinson v. Omer*, 952 S.W.2d at 426. If the moving party successfully negates a claimed basis for the action, the non-moving party may not simply rest upon the pleadings, but must offer proof to establish the existence of the essential elements of the claim.

The standards governing the assessment of evidence in the summary judgment context are also well established. Courts must view the evidence in the light most favorable to the nonmoving party and must also draw all reasonable inferences in the nonmoving party's favor. *See Robinson v. Omer*, 952 S.W.2d at 426; *Byrd v. Hall*, 847 S.W.2d at 210-11. Courts should grant a summary judgment only when both the facts and the inferences to be drawn from the facts permit a reasonable person to reach only one conclusion. *See McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn.1995); *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn.1995).

*Staples*, 15 S.W.3d at 88-89.

The record on appeal shows that the material facts of this matter are undisputed. Accordingly, our review concerns whether Continental is entitled to judgment as a matter of law. *See id.* at 88; Tenn. R. Civ. P. 56.04.

Since this matter involves interpretation of an insurance policy, we will conduct a *de novo* review with no presumption of correctness of the Trial Court's decision. *Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 95 (Tenn. 1999); *American Justice Ins. Reciprocal v. Hutchison*, 15 S.W.3d

811, 814 (Tenn. 2000). "In general, courts should construe insurance contracts in the same manner as any other contract." *American Justice Ins. Reciprocal v. Hutchison*, 15 S.W.3d at 814. In interpreting the Policy, this Court's task is to determine the intention of the parties, and view the "[t]he language of the policy . . . in its plain, ordinary and popular sense." *Guiliano v. Cleo, Inc.*, 995 S.W.2d at 95; *American Justice Ins. Reciprocal v. Hutchison*, 15 S.W.3d at 814. Accordingly, this Court has held:

> [an insurance policy] should not be given a forced, unnatural or unreasonable construction which would extend or restrict the policy beyond what is fairly within its terms, or which would lead to an absurd conclusion or render the policy nonsensical or ineffective.

*Dixon v. Gunter*, 636 S.W.2d 437, 441 (Tenn. Ct. App. 1982) (citing 4 C.J.S. *Insurance* § 296); *see also Demontbreun v. CNA Ins. Co.*, 822 S.W.2d 619, 621 (Tenn. Ct. App. 1991) (holding that an insurance policy should not be construed to extend "coverage beyond its intended scope").

An insurance policy's language is ambiguous if it "is susceptible of more than one reasonable interpretation . . . ." *American Justice Ins. Reciprocal v. Hutchison*, 15 S.W.3d at 815. The courts, however, should "avoid strained constructions that create ambiguities where none exist." *Marshall v. Jackson & Jones Oils, Inc.*, 20 S.W.3d 678, 682 (Tenn. Ct. App. 1999). Moreover, "[a]ll provisions in the contract should be construed in harmony with each other, if possible, to promote consistency and to avoid repugnancy between the various provisions of a single contract." *Guiliano v. Cleo, Inc.*, 995 S.W.2d at 95.

The Policy's language is unambiguous as to the relevant definition of an "uninsured boater" as it states that an uninsured boater is one "to whom no liability policy applies . . . ." Defendant is someone to whom a liability policy does apply. Reviewing the plain, unambiguous, natural, and unforced language of the Policy, Defendant is not an uninsured boater under the specific language providing Plaintiff uninsured boater coverage.

Although the Policy's definition of uninsured boater in "Coverage G" does not include an *under*insured boater, Plaintiff contends that the Policy contains two provisions which should be interpreted to provide coverage for underinsured boaters. Plaintiff points to part "A" of the section entitled "Payment Reductions" found within "Coverage G – Uninsured Boater" and a provision found within the Policy's "General Conditions" entitled "Other Insurance." Plaintiff contends that subsection "A" should be interpreted to expand the definition of uninsured boater since it describes a situation that fits squarely with an incident involving an underinsured boater. Moreover, Plaintiff contends that this subsection, along with the Policy's "Other Insurance" subsection, are analogous to the Tennessee Uninsured Motor Vehicle Coverage statutes' prohibition against stacking coverage. *See* Tenn. Code Ann. § 56-7-1201(d). By analogy, Plaintiff further contends that like the statutory definition of "uninsured motorist," the Policy's definition of uninsured boater should include an underinsured boater. *See* Tenn. Code Ann. § 56-7-1202. Plaintiff admits that the Tennessee Uninsured Motorist Vehicle Coverage statutes are not controlling

here. Plaintiff, however, maintains they are a helpful guide in arriving at a resolution of the issue before us on appeal.

With respect to the provision found within the Policy's "General Conditions" section, we find Plaintiff's argument unpersuasive because specific provisions of a contract control over general provisions. *Cocke Co. Bd. of Highway Comm'rs v. Newport Utils. Bd.*, 690 S.W.2d 231, 237 (Tenn. 1985). The Policy's "Coverage G – Uninsured Boater" section is the specific part of the Policy which addresses coverage provided for uninsured boaters. Its definition of "uninsured boater," which is found in the subsection entitled "Coverage Provided," does not include an underinsured boater such as Defendant. We also note that this language under the "Other Insurance" section relied upon by Plaintiff refers only to "other available insurance that would apply in the absence of this policy . . . ." Defendant's insurance does not apply only in the absence of the Policy, but rather applies whether the Policy exists or not.

Similarly, part "A" of the "Payment Reductions" provision found within the Policy's "Coverage G – Uninsured Boater" section does not extend the Policy's definition of uninsured boater. The first sentence of the "Payment Reductions" provision states: "Payment under *this coverage* shall be reduced by . . . ." (emphasis added). The phrase "this coverage" is referencing the coverage for "uninsured boaters" which is defined in a preceding paragraph of "Coverage G – Uninsured Boater." As discussed, the definition of uninsured boater is clear and unambiguous and does not include *under*insured boaters. To hold otherwise would amount to giving a "strained construction" to the definition and would unduly extend the Policy's coverage "beyond its intended scope." *Marshall v. Jackson & Jones Oils, Inc.*, 20 S.W.3d at 682; *Demontbreun v. CNA Ins. Co.*, 822 S.W.2d at 621.

In addition, we cannot locate, and Plaintiff did not cite to any authority for his argument that the Tennessee Uninsured Motor Vehicle Coverage statutes, by analogy, support his position. This position, although novel, is not based upon any legal authority.

We agree with the Trial Court's determination that the Policy's language does not provide coverage for accidents involving an underinsured boater such as Defendant. The Policy, instead, specifically and only provides *uninsured* boater coverage by defining an "uninsured" boater as one "to whom no liability policy applies. . . . ." This Court has a "duty to enforce contracts according to their plain terms," and we are "precluded from creating a new contract for the parties." *Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc.*, 521 S.W.2d 578, 580 (Tenn. 1975). The Policy's clear definition of "uninsured boater" does not include a boater who is *under*insured but instead states that this coverage applies to situations involving a boat owner or operator "to whom no liability policy applies; or . . . who cannot be identified (such as a hit-and-run operator)." When viewed in light of its "plain, ordinary and popular sense," this definition cannot reasonably be construed to cover situations involving a boater who is underinsured as is Defendant. *American Justice Ins. Reciprocal v. Hutchison*, 15 S.W.3d at 814. If Plaintiff wanted underinsured boater coverage, he and Continental were "free to contract as they [saw] fit so long as they remain[ed] within the bounds of law, including public policy." *Setters v. Permanent Gen. Assurance Corp.*, 937

S.W.2d 950, 953 (Tenn. Ct. App. 1996).  Accordingly, we hold that the Trial Court correctly held that the unambiguous language of the Policy does not include coverage for this accident involving an underinsured boater, the Defendant.

## CONCLUSION

The judgment of the Trial Court is affirmed and this cause is remanded to the Trial Court for such further proceedings as may be required, if any, consistent with this Opinion, and for collection of the costs below.  The costs on appeal are assessed against the Appellant, Murray E. Body, and his surety.

_____
D. MICHAEL SWINEY, JUDGE