IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs May 27, 2014

**JEAN MARIE BAILEY v. BILLIE CARSON BAILEY**

**Appeal from the Chancery Court for Hawkins County**
**No. 14909     Douglas T. Jenkins, Chancellor**

_____

**No. E2013-02195-COA-R3-CV-FILED-JULY 17, 2014**

_____

In this post-divorce action, the petitioner sought to terminate or modify his spousal and child support payments. The trial court terminated the petitioner's child support obligation, lowered the monthly spousal support amount, and reduced the spousal support arrearage owed. The petitioner appeals. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., C.J., and D. MICHAEL SWINEY, J., joined.

Billie Carson Bailey, pro se, appellant.

Jean Marie Bailey, pro se, appellee.

**OPINION**

**I.  BACKGROUND**

The parties, Jean Marie Bailey ("Wife") and Billie Carson Bailey ("Husband") were divorced in July 2003. Husband commenced this action pro se to terminate or modify spousal support and child support.[1] In his petition, he asserted that upon his retirement in June 2010, his income substantially decreased from $82,000-$95,000 down to $43,920 annually. He stated that he was paying out one half of his pension benefit ($1707.72) pursuant to a qualified domestic relations order ("QDRO") entered on August 2, 2004.

_____

[1]The parties' daughter Tammy, 39 years old at the time of the petition, is disabled.

Husband further asserted in his petition that Wife receives each month $1,000 from an annuity payout settlement from 2003 and approximately $2,250 from her job (she was unemployed at the time of the divorce). He contended that she no longer had a need for spousal support. Husband's petition additionally indicated as follows:

> Ex-wife was awarded spousal support of $1275 per month. ***At the time of the divorce I questioned whether that [would] go away when I retire and the QDRO kick in? Both her attorney, Douglas Bier and her and myself agreed that the alimony was only until I retired.*** She remembered that we had made this agreement also but told me that I couldn't prove it!! . . .

(Emphasis added.).

On January 11, 2013, an order was entered setting forth Husband's child support obligation at $0 per month[2] and establishing that Husband owed an arrearage of child support of $1,170. The order further provided that Husband's spousal support obligation was $1,275 per month and established that Husband owed an arrearage of spousal support in the amount of $16,000, as of December 31, 2012. He was ordered to pay $225 per month toward this arrearage.

In the trial court proceedings of August 27, 2013, Wife appeared pro se with Husband. The parties agreed that Husband's child support arrearage had been paid in full in the amount of $1,170. The court ordered that Husband's child support obligation was terminated, thus resolving all child support issues. In its memorandum opinion, the trial court provided further as follows:

> The Court now must decide what, if anything, needs to be done in regards to [Husband]'s obligation for spousal support to [Wife]. ***Although [Husband] has testified that the parties had an oral agreement that spousal support was only to be paid until such time as he retired, this language was never included in the parties' divorce decree and therefore the Court cannot honor the alleged agreement.*** The fact that [Wife]'s spousal support is periodic does allow the Court to make changes, if necessary. The proof in this matter indicates that [Husband] has taken on other obligations freely and voluntarily, those obligations cannot be used to reduce alimony. However, the fact that [Husband] has now retired and his income has reduced compared to his previous wages is a big factor in reducing his spousal support obligation.

---

[2]A prior judgment reflected that Tammy draws $391 a month from Husband's Social Security.

The Court finds that the arrearage, based on this ruling, is $14,136.40. [Husband]'s spousal support should be lowered to $1,000.00 beginning at his retirement in June, 2010. The arrearage payment should remain at $225.00 until the arrearage is fully paid.

\* \* \*

(Emphasis added.). Husband filed a timely appeal.

## II. ISSUE

The issue raised by Husband is as follows:

Whether the trial court erred in not allowing [Husband]'s testimony of an oral agreement under the parol evidence rule of contract law.

## III. STANDARD OF REVIEW

In this non-jury case, our review is de novo upon the record of the proceedings below; but the record comes to us with a presumption of correctness as to the trial court's factual determinations which we must honor unless the evidence preponderates against those findings. Tenn. R. App. P. 13(d); *Wright v. City of Knoxville*, 898 S.W.2d 177, 181 (Tenn. 1995); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993). The trial court's conclusions of law, however, are accorded no such presumption. *Campbell v. Florida Steel Corp.*, 919 S.W.2d 26, 35 (Tenn. 1996); *Presley v. Bennett*, 860 S.W.2d 857, 859 (Tenn. 1993).

In Tennessee, a marital dissolution agreement ("MDA") incorporated into a final decree of divorce "is a contract which is binding on the parties and as such it is 'subject to the rules governing construction of contracts.'" *Johnson v. Johnson*, 37 S.W.3d 892, 896 (Tenn. 2001); *Honeycutt v. Honeycutt*, 152 S.W.3d 556, 561 (Tenn. Ct. App. 2003). Because "the interpretation of a contract is a matter of law, our review is de novo on the record with no presumption of correctness in the trial court's conclusions of law." *Honeycutt*, 152 S.W.3d at 561.

## IV. DISCUSSION

In this state, an MDA incorporated into a final decree of divorce "is a contract which

is binding on the parties." *Stiel v. Stiel*, 348 S.W.3d 879, 885 (Tenn. Ct. App. 2011). Because a MDA is, in essence, a contract between husband and wife in contemplation of a pending divorce, we seek to ascertain their intention from the contract as a whole and to give effect to it. When reference to the provisions of the MDA itself will resolve the issue at bar, courts should defer to them, unless doing so would be unconscionable. *See Bogan v. Bogan,* 60 S.W.3d 721, 730 (Tenn. 2001).

In *Honeycutt*, this court discussed the general rules and principles guiding the construction of a contract, stating as follows:

> The cardinal rule in the construction of contracts is to ascertain the intent of the parties. *Bradson Mercantile, Inc. v. Crabtree*, 1 S.W.3d 648, 652 (Tenn. Ct. App.1999) (citing *West v. Laminite Plastics Mfg. Co.*, 674 S.W.2d 310 (Tenn. Ct. App. 1984)). If the contract is plain and unambiguous, the meaning thereof is a question of law, and it is the Court's function to interpret the contract as written according to its plain terms. *Id.* (citing *Petty v. Sloan*, 197 Tenn. 630, 277 S.W.2d 355 (1955)). The language used in a contract must be taken and understood in its plain, ordinary, and popular sense. *Id.* (citing *Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc.*, 521 S.W.2d 578 (Tenn. 1975)). In construing contracts, the words expressing the parties' intentions should be given the usual, natural, and ordinary meaning. *Id.* (citing *Ballard v. North American Life & Cas. Co.*, 667 S.W.2d 79 (Tenn. Ct. App. 1983)). ***If the language of a written instrument is unambiguous, the Court must interpret it as written rather than according to the unexpressed intention of one of the parties. Id. (citing Sutton v. First Nat. Bank of Crossville, 620 S.W.2d 526 (Tenn. Ct. App. 1981)). Courts cannot make contracts for parties but can only enforce the contract which the parties themselves have made. Id. (citing McKee v. Continental Ins. Co., 191 Tenn. 413, 234 S.W.2d 830 (1950)).***
>
> In *Heyer-Jordan & Associates v. Jordan*, 801 S.W.2d 814, 821 (Tenn. Ct. App.1990), this Court stated that "in the absence of fraud or mistake, a contract must be interpreted and enforced as written, even though it contains terms which may be thought harsh and unjust." *See Petty v. Sloan*, 197 Tenn. 630, 277 S.W.2d 355, 359 (1955).

*Honeycutt*, 152 S.W.3d at 561-62 (citing *Pitt v. Tyree Org., Ltd.*, 90 S.W.3d 244 (Tenn. Ct. App. 2002)) (citation omitted) (emphasis added).

The trial court therefore did not err in determining that Husband's testimony of an oral

agreement was unnecessary under the circumstances. Parol evidence is inadmissible to vary, alter or contradict a decree incorporating an MDA "where the decree is complete, unambiguous, and valid, or where there is no fraud, accident or mistake, or claim of allegation thereof with respect to the agreement incorporated in the instrument." *Kensinger v. Conlee*, Nos. 02A01-9811-CV-00322, 141706, 1999 WL 553713 at *6 (Tenn. Ct. App. July 30, 1999).

Under the clear language of the MDA, when the agreement became effective upon the entry of a final decree of divorce, there was no mention of any agreement between Husband and Wife that spousal support would automatically terminate once Husband retired. Accordingly, the trial court properly determined that any oral agreement not made a part of the final decree could not be controlling in any way.

## V. CONCLUSION

The judgment of the trial court is affirmed. The case is remanded for such further proceedings as may be necessary. Costs of the appeal are assessed to the appellant, Billie Carson Bailey.

_____
JOHN W. McCLARTY, JUDGE