# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
May 13, 2014 Session

## JANET WYNN SNYDER v. FIRST TENNESSEE BANK, N.A.

**Appeal from the Chancery Court for Knox County**
**No. 183863-1     John F. Weaver, Chancellor**

---

### No. E2013-01524-COA-R3-CV-FILED-JUNE 24, 2014

---

This appeal concerns a breach of contract claim brought for an alleged wrongful acceleration of a note in default, a cause of action currently unrecognized in Tennessee law. Janet Wynn Snyder ("Snyder") sued First Tennessee Bank ("the Bank") in the Chancery Court for Knox County ("the Trial Court"). Snyder alleged that the Bank abused its discretion in accelerating her debt when it knew that it held funds of Snyder's in a trust sufficient to cover her debt to the Bank. The Bank filed a motion to dismiss under Tenn. R. Civ. P. 12.02(6), which the Trial Court granted. Snyder appeals. We hold that this claimed wrongful acceleration is not an existing cause of action in this state, and we decline the invitation to create such a cause of action. We affirm the judgment of the Trial Court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the Court, in which JOHN W. MCCLARTY and THOMAS R. FRIERSON, II, JJ., joined.

Mark E. Brown, Knoxville, Tennessee, for the appellant, Janet Wynn Snyder.

J. Michael Winchester, Knoxville, Tennessee, for the appellee, First Tennessee Bank, N.A.

# OPINION

## Background

Snyder's complaint alleges the key background facts of this case. In 1988, Snyder's father executed a last will and testament which created a trust ("the Trust") out of the remainder of his estate. Some years after executing this will, Snyder's father died. Snyder and certain members of her family were beneficiaries of the Trust. Under the terms of the Trust, Snyder received 30% of the income from the Trust annually. The Bank eventually was appointed trustee. The value of the Trust on the date of appointment was $1,464,315.57 with a market value of $1,506,841.21.

Snyder and her husband signed a note and deed of trust for their home as well as a note and deed of trust on a home equity line of credit. These loans were from the Bank. In 2005, Snyder, in the midst of financial difficulties, asked for help from the Trust in making her monthly mortgage payments. Snyder's requests were denied. In the fall of 2005, Snyder asked that the Trust be terminated and that the proceeds be paid to the beneficiaries. The Bank announced that it would resign as trustee. The Bank, however, refused to join the beneficiaries in dissolving the Trust.

In December 2005, Snyder asked the Bank for a "hardship advance" pending the Trust's dissolution so that Snyder could make mortgage payments due the Bank. The Bank did not grant Snyder's request. Snyder alleged that she then had no choice but to hire an attorney to seek dissolution of the Trust. Snyder entered into a contingent fee arrangement with an attorney to seek court approval of the dissolution of the Trust. In March 2006, the Bank filed a petition in the Trial Court seeking the appointment of a successor trustee. Snyder filed a counter-claim.

The Bank threatened foreclosure and served notice on Snyder that it was accelerating its loans on Snyder's home. At this point, Snyder's share of the Trust would have been sufficient to cover the loan shortfall. Snyder obtained several delays of the foreclosure. In November 2006, the Trust was dissolved by agreed order. The Bank wrote itself a check from the corpus of the Trust to cover the Snyder's loan deficiency. The Bank failed to make distributions to the beneficiaries. Snyder filed a motion to compel the Bank to make the distributions, which the Bank subsequently did.

In October 2012, Snyder sued the Bank seeking compensatory and punitive damages. Snyder alleged breach of contract in that the Bank acted in bad faith and forced Snyder to incur needless attorney's fees in dissolving the Trust. The Bank filed a motion to dismiss for failure to state a claim upon which relief can be granted and failure to join a

party. Snyder filed a response to the motion, clarifying that her complaint alleged "breach of the Deed of Trust contract on the real property."

In March 2013, the Trial Court heard arguments on the Bank's motion to dismiss. In May 2013, the Trial Court granted the Bank's motion to dismiss for failure to state a claim upon which relief can be granted.[1] In its memorandum opinion incorporated into the final judgment of dismissal, the Trial Court held, *inter alia*: any breach of fiduciary duty claim was time-barred; no foreclosure occurred and any wrongful foreclosure claim failed; and, there was no breach of contract claim as any such claim was time-barred, and, in any event, the Bank did not breach its contracts. The Trial Court stayed the issue of costs and attorney's fees sought by the Bank under Tenn. Code Ann. § 20-12-119(c) pending resolution of any appeal.[2] Thereafter, Snyder timely appealed to this Court.

## **Discussion**

Although not stated exactly as such, Snyder raises one issue on appeal: whether the Trial Court erred in dismissing Snyder's claim for breach of contract. The Bank raises the additional issue of whether the Trial Court properly held that Snyder's breach of contract claim was time-barred.

The Trial Court disposed of this case by granting the Bank's motion to dismiss pursuant to Tenn. R. Civ. P. 12.02(6). Our Supreme Court has discussed the standard of review for motions to dismiss:

A Rule 12.02(6) motion challenges only the legal sufficiency of the complaint, not the strength of the plaintiff's proof or evidence. The resolution of a 12.02(6) motion to dismiss is determined by an examination of the pleadings alone. A defendant who files a motion to dismiss " 'admits the truth of all of the relevant and material allegations contained in the complaint, but . . . asserts that the allegations fail to establish a cause of action.' "

In considering a motion to dismiss, courts " 'must construe the complaint liberally, presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences.' " A trial court should grant

---

[1]The Trial Court denied the Bank's motion to dismiss with respect to the basis of failure to join a party.

[2]The Trial Court directed entry of its May 31, 2013 order as a final judgment of dismissal pursuant to Tenn. R. Civ. P. 54.02.

a motion to dismiss "only when it appears that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief." We review the trial court's legal conclusions regarding the adequacy of the complaint de novo.

*Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011) (internal citations omitted).

We now address whether the Trial Court erred in dismissing Snyder's claim for breach of contract. In her brief on appeal, Snyder points to Paragraph 22 of the Non-Uniform Covenants in the Deed of Trust entered into between Snyder and the Bank, which provides in relevant part:

> 22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

Snyder acknowledges that the entire Deed of Trust, including Paragraph 22, is a binding and enforceable contract between Snyder and the Bank. Nevertheless, Snyder argues in her brief that the Bank "abused [its] discretion" in accelerating the debt:

> The Plaintiff has alleged in her Complaint that the Defendant abused [its] discretion, by unconscionable means and without reasonable justification, which is a breach of the Deed of Trust contract. She has also alleged that the actions of the Defendant, in accelerating the debt when it had full knowledge

that it held funds sufficient to cover the debt, were an unconscionable enforcement of paragraph 22 and the Deed of Trust thus creating a clear abuse of discretion. The Plaintiff has further alleged that she was in communication with the Defendant's Trust Department, as well as the Defendant's foreclosure department and that the Trust Department had offered to assist the Plaintiff when and if the foreclosure department moved to foreclose on the Plaintiff's home. The Plaintiff's Complaint also alleged that the foreclosure department, because it was aware that money existed sufficient to pay the amounts due on the mortgage upon dissolution of the Trust, had no reasonable justification for accelerating the debt.

(Internal citations omitted). Snyder candidly admits that she can cite to no Tennessee law in support of this doctrine of wrongful acceleration of a note in default. Snyder instead cites to a number of cases from other jurisdictions addressing principles of equity and acceleration clauses.

As noted by this Court in *Elliott v. Elliott*, 149 S.W.3d 77 (Tenn. Ct. App. 2004):

Every contract imposes upon the parties a duty of good faith and fair dealing in the performance and interpretation of the contract. *Wallace v. National Bank of Commerce*, 938 S.W.2d 684, 686 (Tenn. 1996); RESTATEMENT (SECOND) OF CONTRACTS § 205 (1979); 2 JOSEPH M. PERILLO & HELEN HADJIYAUUAKIS BENDER, CORBIN ON CONTRACTS § 5.27, at 139 (rev. ed.1995). This duty requires a contracting party to do nothing that will have the effect of impairing or destroying the rights of the other party to receive the benefits of the contract. *Winfree v. Educators Credit Union,* 900 S.W.2d 285, 289 (Tenn. Ct. App.1995).

*Elliott*, 149 S.W.3d at 84-85.

It is not the role of the courts, even courts of equity, to rewrite contracts for dissatisfied parties. "[I]t is an often-cited principle in this jurisdiction that '[i]n the absence of mistake or fraud, the courts will not create or rewrite a contract simply because its terms are harsh or because one of the parties was unwise in agreeing to them.' " *Towe Iron Works, Inc. v. Towe,* 243 S.W.3d 562, 569 (Tenn. Ct. App. 2007) (quoting *Dobbs v. Guenther*, 846 S.W.2d 270, 276 (Tenn. Ct. App. 1992)).

Snyder defaulted on her loan as a result of her non-payment. Snyder acknowledges that the Bank had the discretion to accelerate her debt because of her default.

The Bank was under no obligation, contractual or otherwise, to forbear on its right to accelerate. In accelerating Snyder's debt, the Bank did no more than what it was allowed to do under the contract. Whether the Bank knew it held other of Snyder's funds in the Trust that could cover the debt eventually is irrelevant to the terms of the contract. "Performance of a contract according to its terms cannot be characterized as bad faith." *Wallace v. National Bank of Commerce*, 938 S.W.2d 684, 687 (Tenn. 1996).

Snyder asks us to break new ground and create the cause of action of wrongful acceleration of a note in default in the State of Tennessee. We decline this invitation. The various cases that Snyder cites to from other jurisdictions are inapposite. Even if we were to forge into new territory and recognize the doctrine of wrongful acceleration of a note in default, we would not apply it under these circumstances where the Bank did what it plainly was allowed to do under the contract between the parties. We affirm the Trial Court's dismissal as the Bank satisfied its burden under Tenn. R. Civ. P. 12.02(6).[3]

## Conclusion

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for collection of the costs below and further proceedings pursuant to Tenn. Code Ann. § 20-12-119(c). The costs on appeal are assessed against the Appellant, Janet Wynn Snyder, and her surety, if any.

_____
D. MICHAEL SWINEY, JUDGE

---

[3]Our resolution of Snyder's issue makes it unnecessary for us to address the additional issue raised by the Bank.